UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH L. FAULKER, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>KEN PHILLIPS et al.,<br><br>Defendant. | Case No.:  16-CV-63-DMS(WVG)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS FARIAS AND BUCK'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 10, 11.]** |

Plaintiff Kenneth L. Faulkner, Jr., a California state prison inmate, sues four officials at Centinela State Prison, alleging they violated his First Amendment right to the free exercise of religion by denying him a kosher diet when he was housed at Centinela. Pending before the Court are Defendants' motion to dismiss and Defendants Farias and Buck's motion for summary judgment for failure to exhaust administrative remedies. As explained herein, this Court recommends that Defendants Farias and Buck's motion for summary judgment be granted and judgment be entered in their favor. This Court further recommends that Defendants' motion to dismiss be granted in part and denied in part.

/ / /

/ / /

## I. BACKGROUND

California's Centinela State Prison offers its prisoners alternative dining options such as a vegetarian or kosher diet. Plaintiff was a participant in the prison's Jewish Kosher Diet Program (the "Program") until he was removed therefrom in February 2015.[1] (Doc. No. 1 at 18.)[2] Defendants Rabbi Posner (Centinela's Jewish chaplain) and Phillips (Centinela's Community Resource Manager) punitively removed him from the Program after he violated the Program's rules requiring him to abide by the prison's dining policies which, in part, prohibit prisoners from any taking food back to their jail cells from the cafeteria. (*Id.* at 7, 19.)

Prior to Plaintiff's removal from the Program, Defendant Farias issued Plaintiff at least one rules violation notice after Farias reportedly witnessed Plaintiff conceal food and attempt to remove it from the dining hall. (*Id.* at 19.) Plaintiff alleges that Defendants Farias and Buck, both of whom are Correctional Officers at Centinela, singled him out for frequent searches and confiscation of his kosher food, harassed him in the dining room, would not let him get hot water for his oatmeal, would not let him wait for his frozen food to thaw, stopped him from taking his food out of the dining room, and Farias lied at Plaintiff's disciplinary hearing, saying that he took food out of the dining hall even though he had not yet left the dining hall with his food. (*Id.* at 2-6, 8-9.) Plaintiff accordingly alleges Buck and Farias violated his First Amendment right to freedom of religion.[3]

---

[1] Defendant is no longer housed at Centinela State Prison.

[2] All citations to documents filed on the Court's CM/ECF system are to the system's electronically-generated pagination.

[3] Plaintiff previously sued Defendants Buck and Farias in this Court in *Kenneth L. Faulkner, Jr. v. State of California et al.*, No. 15-CV-780-MMA(NLS) and now brings the same allegations in the instant case. In that case, as here, Defendants Buck and Farias moved for summary judgment for failure to exhaust administrative remedies, and the Court granted the motion.

After his removal from the Program, Defendant Posner, who has the authority and discretion to remove a prisoner from the Program, informed Plaintiff he could be reinstated upon re-evaluation after a six-month waiting period, during which time he could participate in the vegetarian diet program. (*Id.* at 18.) Plaintiff now alleges Defendants Posner and Phillips wrongly denied him a kosher diet between June 2014 and January 2015 in violation of his First Amendment right to freely exercise his religion. (*Id.* at 2, 5, 6.)

In response to these allegations, all four defendants brought a motion to dismiss, (Doc. No. 11), and Defendants Buck and Farias also moved for summary judgment for failure to exhaust administrative remedies, (Doc. No. 10).

## II. DISCUSSION

### A. Defendants Farias and Buck's Motion for Summary Judgment (Doc. No. 10)

Defendants Farias and Buck contend Plaintiff has not completed the administrative remedies exhaustion process that statute requires before he can bring suit against them. Based on the totality of the evidence presented by the parties, Farias and Buck are correct. Although Plaintiff filed various grievance appeals, he never completed each sequential step of the three-level appeal process against either Farias or Buck. Thus, because Plaintiff did not exhaust his administrative remedies before filing suit against Farias and Buck, they are entitled to entry of judgment in their favor.

#### 1. Legal Standard: Exhaustion of Remedies and Summary Judgment

The Prison Litigation Reform Act requires inmates to exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The administrative requirements that must be exhausted are those that are established by the particular state's prison system. *Jones v. Bock*, 549 U.S. 199, 218 (2007). In California, those administrative remedies are set forth in Title 15 of the California Code of Regulations.

California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. First, within fifteen working days of "the event or decision being appealed," the inmate must

ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." 15 Cal. Code Regs. §§ 3084.5(a), 3084.6(c). If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. *Id.* §§ 3084.5(b), 3084.6(c). Next the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. *Id.* § 3084.5(e)(1)-(2). The exhaustion process is completed only after the inmate receives the third-level decision. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). An inmate may not file suit in federal court until he has completed each step of this exhaustion process. *Vaden v. Summerhill*, 449 F.3d 1047, 1050-51 (9th Cir. 2006).

The proper method for challenging and establishing an inmate's failure to comply with the exhaustion requirement is a motion for summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Under *Albino*, defendants must present undisputed evidence to establish that a plaintiff failed to exhaust administrative remedies that were available to him. *Id.* at 1169. Once the defendant has presented such evidence, the burden then shifts to the plaintiff to come forward with evidence to show that the administrative appeal process was unavailable to him. *Id.* at 1172.

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A party opposing a motion for summary judgment must affirmatively show that a dispute about a material fact is genuine, such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard requires that this Court grant a defendant's motion if the evidence produced against the motion is "merely colorable" or "not significantly probative." *Id.* at 249; *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987).

## 2. Evidence of Plaintiff's Exhaustion of His Administrative Remedies

In support of their summary judgment motion, Defendants Farias and Buck submit two declarations with relevant grievance appeal documentation and CDCR decisions attached as exhibits. In opposition to Defendants' motion, Plaintiff submits some of the same documents. They show that although Plaintiff filed multiple appeals of his removal from the Program, he did not mention Defendants Farias or Buck in all of them and successfully completed the entire appeal process in only one of them—but not against either Buck or Farias.

### a. Evidence from R. Gibson Declaration

"R. Gibson" is the Appeals Coordinator at Centinela Prison, and his office receives all inmate grievances at the first and second levels of review. Gibson avers in his declaration that his office conducted a search of its records to determine whether Plaintiff submitted any grievances related to the allegations in the Complaint against Defendants Buck and Farias. This search indicated that Plaintiff submitted numerous grievances, several of which generally relate to the subject matter of the claims in this case.

*1. Appeal Log No. CEN-D-15-00291.*[4] In this appeal, Plaintiff complained that he had not been receiving a kosher diet after he had been removed from the Program. (Gibson Decl. at ¶ 8(b).) At the first-level review, he expressed desire to be re-enrolled in the Program and attached four documents as exhibits, none of which mentioned Defendants Farias or Buck. The grievance was denied at the first level of review. (*Id.*) Plaintiff

---

[4] In addition to this appeal, Plaintiff filed a separate grievance appeal, CEN-D-15-00184, which raised the same issues as the -00291 grievance and was canceled as duplicative at the third-level of review. Another appeal, CEN-D-15-01091 was also cancelled but at the first-level of review because it was a duplicate of the -00184 appeal. Finally, appeal CEN-D-15-00276 was rejected at the first level of review because Plaintiff had not filed the required informal grievances. (Gibson Decl., Ex. 8.) In any event, none of these three cancelled or rejected appeals mentioned Defendants Farias and Buck in the first level of review. Consequently, exhaustion of administrative remedies cannot be based on these appeals.

appealed to the second level, where he alleged for the first time that Defendant Farias accused him of taking food out of the dining room. (*Id.*) This allegation about Defendant Farias was not included in Plaintiff's original grievance. (*Id.*) The appeal was denied at the second level, and Plaintiff appealed to the third level. (*Id.*) The appeal was denied at the third level. (*Id.*; Voong Decl. at ¶ 8(b).) This constitutes the only time Plaintiff completed a relevant appeal through third-level review. The remaining appeals below were cancelled or rejected either at the first-level review or before the entire appeal process completed.

   *2. Appeal Log No. CEN-D-14-00458.*[5] In this grievance appeal, Plaintiff alleged that Defendant Buck refused to allow him to return to his cell with his kosher meal. (Decl. Gibson at ¶ 9(b).) The appeal was screened out twice because Plaintiff had not presented his grievance for review at the informal supervisory level. (*Id.*; *see also id.* Ex. 5, Doc. No. 10-4 at 18 (showing blank "Supervisor's Review" section).) Plaintiff was instructed to re-submit his appeal if he was still dissatisfied after he had completed this step. (*Id.*) However, he did not re-submit the grievance again after the second screen-out. (*Id.*) As a result, this grievance did not proceed past the first level of formal review.

   *3. Appeal Log No. CEN-D-14-01245.* In this appeal, Plaintiff alleged, among other things, that Defendant Farias prohibited him from returning to his cell with his kosher meal, refused to allow him to get hot water for his kosher meal, and gave him an "invalid" rules violation.[6] (Gibson Decl. at ¶ 9(c).) The appeal was screened out and returned to Plaintiff because it involved multiple issues that conflicted with each other, or were not directly related and could not be reasonably addressed in a single response. (*Id.*; Doc. No. 10-4 at 13; *see* 15 Cal. Code Regs. § 3084.6(b)(8).) Plaintiff was instructed to resubmit the

---

[5] In addition to this grievance, Plaintiff filed a separate grievance, CEN-D-14-00255, which raised the same issues as the -00458 grievance and was canceled as duplicative. (Doc. No. 10-3 at 30.)

[6] Otherwise known as a "Custodial Counseling Chrono."

unrelated issues separately using separate appeal forms. (Gibson Decl. at ¶ 9(c).) Although Plaintiff re-submitted the grievance, he failed to do so within thirty days, and his resubmission did not correct the deficiencies. (*Id.*; *see* 15 Cal. Code Regs. § 3084.6(c)(10).) The appeal was therefore cancelled. (Gibson Decl. at ¶ 9(c).) As a result, this appeal did not proceed past the first level of formal review.

*4. Appeal Log No. CEN-D-14-1407.* Plaintiff next complained about being removed from the Program after receiving a violation report for violating Program rules. (Gibson Decl. at ¶ 9(d).) However, Plaintiff bypassed the first-level and second-level reviews and proceeded directly to the third-level review. (Doc. No. 10-4 at 23-24.) At the third level, this grievance was screened out because it was missing required supporting documentation. (*Id.*; Doc. No. 10-4 at 20-22; *see* 15 Cal. Code Regs. § 3084.6(b)(7).) Plaintiff was instructed on how to correct the deficiency, and he re-submitted the grievance twice. (Gibson Decl. at ¶ 9(d).) However, he again failed to attach required supporting documentation both times. (*Id.*) He did not re-submit the grievance again. As a result, this grievance did not complete the third-level formal review.

*5. Appeal Log No. CEN-D-15-00017.* Finally, Plaintiff complained about his removal from the Program because of an "invalid" rules violation report. (Gibson Decl. at ¶ 9(e).) The grievance was screened out and returned to him because it involved multiple issues that were conflicting with each other, or were not directly related; could not be reasonably addressed in a single response; and because it was missing necessary supporting documents. (*Id.*; Doc. No. 10-4 at 38-39; *see* 15 Cal. Code Regs. § 3084.6(b)(8).) Plaintiff was instructed to resubmit the unrelated issues separately using separate appeal forms with supporting documents. (Gibson Decl. at ¶ 9(e).) In addition, he was advised that if the chrono referenced in the appeal was in fact dated January 10, 2014, the grievance would be cancelled as untimely. (*Id.*; *see* 15 Cal. Code Regs. § 3084.6(c)(4).) Plaintiff did not resubmit the appeal. (Gibson Decl. at ¶ 9(e).) This appeal did not proceed past the first-level review.

### b. Evidence from M. Voong Declaration

"M. Voong" is the Chief of the Office of Appeals for the California Department of Corrections and Rehabilitation ("CDCR"), and his office receives all non-medical inmate appeals. Voong ran a records search to determine whether Plaintiff submitted any appeals between June 2014 and the present related to the allegations he makes in this case against Defendants Buck and Farias. (Voong Decl. at ¶¶ 7-8.) His search revealed that Plaintiff submitted several appeals, only one of which raised allegations related to his allegations in this case against Buck and Farias.

The appeal Voong found was that of grievance Log No. CEN-D-15-00291, in which Plaintiff asked to receive a kosher diet and was logged in Voong's office as IAB Log No. 1415705. (*Id.* ¶ 8(b) & Ex. 2.) At the second level of review of this appeal, Plaintiff had added an allegation about Defendant Farias. (*Id.*) However, because he had not included that allegation against Farias in his original grievance, it could not be addressed at the third level of review. (*Id.*; 15 Cal. Code Regs. § 3084.1(b).) Accordingly, the allegation against Defendant Farias was not addressed at the third level of review. (*Id.*) Moreover, this appeal did not mention Defendant Buck.

### 3. Plaintiff Has Not Exhausted His Administrative Remedies Against Defendants Farias and Buck

Plaintiff opposes the summary judgment motion and contends he has exhausted all administrative remedies. However, as Defendants emphasize in their reply, Plaintiff did not contradict Defendants' evidence, but simply submitted copies of only two appeals, which does nothing to call into question Defendants' exhaustion argument. As the uncontested evidence above demonstrates, of the multiple appeals Plaintiff filed, the only one that he completed and could possibly exhaust his administrative remedies against Defendants Buck and Farias is CEN-D-15-00291. This appeal reached third-level review, was fully adjudicated, and was denied. However, Plaintiff did not exhaust his claims against either Defendant Buck or Farias through this appeal.

First, as to Defendant Farias, the third-level decision in this appeal did not consider or address the new allegation Plaintiff added against Farias for the first time at the second-level review. The decision did not consider the allegation against Farias because new claims added at a higher level of review are not deemed to have been properly presented and cannot be deemed exhausted. (Gibson Decl. at ¶ 8(b); *see* 15 Cal. Code Regs. § 3084.1(b).[7]) Because Plaintiff did not allege any grievance against Farias at the first-level review in the -00291 appeal, he could not have exhausted his claims against Farias for purposes of the Court's administrative exhaustion analysis.

Moreover, as to Defendant Buck, because Plaintiff did not mention him at *any* level of review in this, his only fully-adjudicated appeal, he could not possibly have exhausted his administrative remedies against Buck. Consequently, the uncontested evidence establishes that Plaintiff has not exhausted his administrative remedies against Defendants Buck and Farias.

Because these defendants have successfully presented evidence of Plaintiff's failure to exhaust his administrative remedies against them, the burden shifts to Plaintiff to demonstrate the administrative appeal process was unavailable to him. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). He has not done so. Instead, he simply asserts he has exhausted his administrative remedies and presents some of the same documents that Buck and Farias filed in support of their summary judgment motion.[8] The totality of the documents both sides have submitted actually undermine any argument that the administrative appeal process was unavailable to Plaintiff, as the number of appeals Plaintiff filed show his extensive use of the appeal process. Plaintiff filed multiple appeals

---

[7] Section 3084.1(b) states, in relevant part: "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602."

[8] While these documents may demonstrate Plaintiff's exhaustion of administrative remedies against *other defendants* in this case, they do not do the same as to Defendants Buck and Farias.

and successfully adjudicated one appeal through the third level of review.  Accordingly, he cannot meet his burden to demonstrate that the administrative appeal process was not available to him—it clearly was.

Based on Plaintiff's failure to exhaust his administrative remedies against Defendants Farias and Buck, these defendants only are entitled to summary judgment, their motion should be granted, and judgment should accordingly be entered in their favor.

**B.     Defendants' Motion to Dismiss Complaint (Doc. No. 11)**

Defendants also move to dismiss the Complaint, arguing (1) they are protected from liability for damages in their official capacities by absolute immunity under the Eleventh Amendment; (2) Plaintiff's claims arising out of his disciplinary hearing are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) Defendants Buck and Farias are protected by qualified immunity; and (4) Plaintiff's request for injunctive relief is moot.  Each is addressed in turn below.

**1.     The Eleventh Amendment Bars Suit Against All Defendants in Their Official Capacities**

Defendants contend they enjoy absolute immunity from suit to the extent they have been sued in their official capacities because the Eleventh Amendment bars Plaintiff's suit. Plaintiff contends they "are not covered by either 'absolute' or 'qualified' immunity [because] they should have known they were intentionally violating Plaintiff's [c]onstitutional rights." (Doc. No. 17 at 2.)  Plaintiff also mentions in passing that States "wave [sic] their sovereign immunity by accepting federal funds." (*Id.* at 3.)  Defendants are correct.

Subject to narrow exceptions that do not apply here, the Eleventh Amendment generally bars suit against the State, its agencies, and state officials sued in their official capacities.  *Mitchell v. Wash.*, 818 F.3d 436, 442 (9th Cir. 2016); *Krainski v. Nev. ex. rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010). "An official sued in his official capacity has the same immunity as the state, and is entitled to [E]leventh [A]mendment immunity."  *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992); *see also*

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). Moreover, "[t]he State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ." *Dittman v. Cal.*, 191 F.3d 1020, 1025-26 (9th Cir. 1999); *see also Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (citing *Dittman*).[9]

Here, Plaintiff sues Defendants in both their official and personal capacities. To the extent he seeks damages against Defendants in their official capacities, his claims are barred by the Eleventh Amendment as a matter of law.[10] Even assuming, for the sake of argument, Plaintiff correctly contends Defendants knew they were violating his constitutional rights, Eleventh Amendment immunity would still apply. Defendants' knowledge regarding violating clearly established constitutional rights is irrelevant in the context of the Court's Eleventh Amendment absolute immunity analysis because in this context, Plaintiff's suit against Defendants in their official capacities is akin to a suit against the State of California, which has not waived its sovereign immunity.

Because Plaintiff's claims against Defendants in their official capacities is barred as a matter of law, Plaintiff will not be able to plead any facts to cure this deficiency, and

---

[9] Without citing authority, Plaintiff contends the State waived its sovereign immunity by accepting federal funding under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and Religious Freedom Restoration Act ("RFRA"). The Supreme Court and Ninth Circuit have squarely held to the contrary. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (RLUIPA); *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (RLUIPA); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012) (RFRA).

[10] A narrow exception to this rule occurs when state officers are sued in their official capacities and the plaintiff seeks only a declaratory judgment or injunctive relief. *Brown v. Or. Dep't of Corr.*, 751 F.3d 984, 989 (9th Cir. 2014) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)). However, because, as explained below, Plaintiff's claim for injunctive relief is moot, he cannot bring suit against Defendants in their official capacities under this exception.

amendment would be futile as a result. Accordingly, Defendants are entitled to dismissal with prejudice of all claims brought against them in their official capacities.

### 2. The Court Lacks Sufficient Information to Grant Defendants' Motion on the Basis that *Heck v. Humphrey* Bars Plaintiff's Claims

Defendants also contend that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars any "claims"[11] that arise from the disciplinary hearing in which Plaintiff lost 30 days' good-time credit because "a judgment in Plaintiff's favor on these claims would necessarily imply the invalidity of the decision in that disciplinary hearing and of the 30-day credit forfeiture, which impacted the length of his sentence." (Doc. No. 11-1 at 5.) However, *Heck* and its progeny are more nuanced than Defendant Farias advocates, and the Court lacks sufficient information at this stage to grant the motion. Accordingly, this argument for dismissing the Complaint should be rejected.

Habeas corpus and section 1983 are the two main avenues for relief on complaints related to imprisonment. *Nettles v. Grounds*, 830 F.3d 922, 927, 929 (9th Cir. 2016) (en banc). *Heck* is one in the line of Supreme Court opinions beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), which sought to delineate when a prisoner may bring

---

[11] Although Defendants state that Plaintiff's "claims" are generally *Heck*-barred, (*see* Doc. No. 11-1 at 5:13-19), *Heck*, if applicable, would bar only those claims brought against Defendant Farias but no other defendant. This is because the disciplinary action that led to the 30-day credit forfeiture involved only one violation report issued by Defendant Farias, (Doc. No. 11-1 at 9), and Farias was the only government witness in the hearing. The disciplinary action did not involve any of the other defendants, and indeed Defendant Phillips was specifically excluded as a witness by the hearing officer because "he was not present at the time of the violation and could not provide relevant information." (*Id.* at 11.) Presumably, Defendants Posner and Buck were also not present since they were not called as witnesses by either side. The substance of disciplinary hearing did not involve other facets of Plaintiff's claims, including his removal from the Program and all decisions and actions taken related to his removal. The hearing also did not involve any of Plaintiff's allegations against Defendant Buck. It focused solely on the rules violation issued by Defendant Farias. Thus, even if *Heck* applies here, it does so in a very narrow manner and only as to Defendant Farias.

action under section 1983 and when he is limited to habeas corpus relief. *Id.* at 927. As the Ninth Circuit explained in its recent comprehensive review, this line of cases created what is known as the "favorable termination" rule which bars inmates from bringing section 1983 actions for claims that fall within the "core" of habeas corpus. *Id.* at 927, 928. In the context of challenges to disciplinary proceedings, such challenges "are barred by *Heck* only if the section 1983 action would be 'seeking judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served." *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (per curiam). A state prisoner's section 1983 suit is barred "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). Even when a challenge to prison disciplinary proceedings "may affect the duration of time to be served (by bearing on the award or revocation of good-time credits)," where "it is not necessarily so," a challenge to such proceedings "raise[s] no claim on which habeas relief could have been granted," *Muhammad*, 540 U.S. at 754-55, and section 1983 is the inmate's exclusive avenue for relief on complaints about his imprisonment. *Nettles*, 830 F.3d at 931, 934.

In the context of disciplinary hearings, "the favorable termination rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement. Where the prison's alleged constitutional error does not increase the prisoner's total period of confinement, a successful § 1983 action would not necessarily result in an earlier release from incarceration, and hence, does not intrude upon the 'heart' of habeas jurisdiction." *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003); *see also Nettles*, 840 F.3d at 929 n.4. In such cases, "*Heck* does not bar a § 1983 claim that 'threatens no consequence for [an inmate's] conviction or the duration of [his or her sentence.]'" *Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014) (quoting *Muhammad*, 540 U.S. at 751). Applying these principles in *Wilkerson*, the Ninth Circuit held that *Heck* did not apply there because the inmate was serving an indefinite life sentence and any "loss of good-time credits could not extend his potential term, which is life in prison." *Id.*

Here, the Court is unable to determine how Plaintiff's success on this lawsuit's merits will impact his sentence. Nothing in the record, including the disciplinary records Defendants have filed, indicate the length of Plaintiff's prison term. If, like the inmate in *Wilkerson*, Plaintiff is serving an indefinite life sentence, then *Heck* would not bar any claims that arise from the disciplinary hearing in this case because restoration of 30 days' credit would not impact his sentence. Because the Court lacks sufficient information about Plaintiff's sentence, the determination whether *Heck* applies cannot be made. *Cf. Hernandez v. Martinez*, No. 10-CV-1064-LJO(SAB), 2016 U.S. Dist. LEXIS 48573, at *19-20, 2016 WL 1408453, at *7 (E.D. Cal. Apr. 11, 2016) (recommending denial of the defendants' summary judgment motion where inmate averred he was serving an indeterminate life sentence) (unpublished). Accordingly, Defendant Farias's motion to dismiss based on *Heck* should be denied based on the foregoing discussion or denied as moot based on the grant of his summary judgment motion.

### 3. Defendants Buck and Farias Are Entitled to Qualified Immunity

Defendants Buck and Farias contend they are entitled to dismissal because they enjoy qualified immunity from suit. The merits of Defendants Buck and Farias's argument notwithstanding, this portion of the motion to dismiss could be denied as moot based on the recommendation above that summary judgment be entered in their favor. However, if the reviewing Court is not inclined to so rule, Defendants Buck and Farias are nonetheless entitled to dismissal because they are protected by qualified immunity under the facts of this case.

#### a. Legal Standard

Although the Eleventh Amendment bars suit against Defendants in their official capacities, it does not "bar claims for damages against state officials in their *personal* capacities." *Mitchell v. Wash.*, 818 F.3d 436, 442 (9th Cir. 2016) (citation omitted; emphasis in original). However, government officials who perform discretionary functions generally are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is meant to protect government officials from litigation; it is an immunity from suit, not merely a defense. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Supreme Court has set forth a two-part analysis for resolving qualified immunity claims, which the Court may address in any order. *See id.* at 236; *Bardzik v. Cty. of Orange*, 635 F.3d 1138, 1145 n.6 (9th Cir. 2011) (recognizing option to address only the clearly-established step, but concluding that addressing whether there was a constitutional violation was proper under the circumstances). First, the Court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson*, 555 U.S. at 236. Second, the Court must determine whether the right was clearly established at the time of the alleged violation. *Id.*

"[A]lthough the first *Saucier* prong calls for a factual inquiry, the second prong of the *Saucier* analysis is solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (internal quotations and citations omitted); *see also Serrano v. Francis*, 345 F.3d 1071, 1080 (9th Cir. 2003). If the Court determines that an official is entitled to qualified immunity on any section 1983 claims for damages that are part of the action, the Court may dismiss those claims prior to discovery. *Dunn*, 621 F.3d at 1199 (reversing district court's denial of qualified immunity at motion to dismiss stage and explaining that it was "particularly appropriate to resolve [the] case at this stage because the Supreme Court has repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal quotations and citation omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

/ / /

/ / /

/ / /

### b. Because Any Constitutional Right Was Not Clearly Established, Defendants Buck and Farias Are Entitled to Qualified Immunity Protection

Assuming—for the sake of argument only—that the Complaint sufficiently satisfies the first *Saucier* prong and shows a violation of a constitutional right, this Court begins with the second prong: whether the right was clearly established. As alleged against Defendants Buck and Farias, the assumed constitutional right in question was not clearly established because their conduct was authorized by law, and a reasonable officer confronted with the same situation would not have known his conduct was unlawful.[12] Consequently, Defendants Buck and Farias are entitled to qualified immunity.

The cornerstone of *Saucier*'s second inquiry is whether the constitutional right in question was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-02. In other words, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Logically, then, when an official takes action that is authorized by law, "[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009); *see also Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("[T]he existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional."); *accord Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003) ("Common sense dictates that reasonable public officials are far less likely to conclude that their actions violate clearly established rights when they are enforcing a statute on the books with no transparent constitutional problems. Thus, in the realm of

---

[12] Again, this Court assumes, for the sake of argument and for this Report and Recommendation only, that the conduct was unlawful.

objective reasonableness, we hold that enforcement of a presumptively valid statute creates a heavy presumption in favor of qualified immunity.")

Here, Plaintiff alleges Defendant Farias ordered him to stay seated in the prison dining hall, did not allow him to retrieve hot water for his oatmeal, confiscated his food, and told him his kosher diet would be discontinued. (Complaint, Doc. No. 1 at 2-3.) Plaintiff alleges Defendant Buck would not allow him to leave the dining room with frozen food, frequently searched him, and told him his kosher diet would be discontinued. (*Id.*) However, a reasonable officer in these defendants' position would not have known that his conduct violated a constitutional right because these defendants simply undertook various actions to enforce the rule that prevents Plaintiff taking food from the dining hall, and such actions were authorized by law.

In California prisons, inmates may not remove food from dining rooms. 15 Cal. Code Regs. § 3055. At Centinela, the terms of participation in the Program apply this general rule to kosher food items as well. (*See* Complaint, Doc. No. 1 at 19 (documenting violation of Program rules).) Thus, preventing Plaintiff from leaving the dining room with food and taking it to his cell was in accordance with both the established rules of the Program as well as the California Code of Regulation that specifically prohibits removal of food from dining rooms. Similarly, confiscation of food as Plaintiff attempted to leave the dining room was in compliance with the same regulation and rules. Moreover, Buck's subsequent "frequent" searches of Plaintiff were in furtherance of enforcement of the regulation and Program rules, as Plaintiff had been caught violating the regulation and rules in the past. And as Plaintiff's pleadings demonstrate, any statements about having him removed from the Program were a direct result of his repeated failure to follow the Program's rules, including the prohibition against removing food from the dining room. (*See* Complaint, Doc. No. 1 at 19.)

Given that these defendants' conduct was authorized by a state regulation and the Program's rules applying that regulation, it would not be clear to a reasonable officer that his conduct was unlawful under these circumstances. Thus, no reasonable official in these

defendants' position could conceive that complying with his duty to prevent an inmate from simply removing food from a prison dining room would amount to a violation of the United States Constitution. Nor could any official conclude that taking other various actions in furtherance of enforcing this rule would violate the Constitution.

Ultimately, it may not be necessary that the Court reach the issue of Buck and Farias's qualified immunity in light of the recommendation that their summary judgment motion be granted and judgment be entered in their favor. Nonetheless, because it would not be clear to a reasonable officer that Buck and Farias's conduct was unlawful in the situation they confronted, they are entitled to qualified immunity. Accordingly, Plaintiff's claims against Defendants Buck and Farias should be dismissed with prejudice if the Court wishes to deny the summary judgment motion or reach the qualified immunity issue.

### 4. Plaintiff's Claim for Injunctive Relief is Moot

Plaintiff seeks an injunction preventing Defendants from denying him a kosher diet. (Doc. No. 1 at 10.) Defendants contend this claim is moot because Plaintiff was transferred to a different prison and is no longer housed at Centinela, where Defendants currently work. Plaintiff did not address this argument in his opposition. Defendants are correct.

Where a prisoner is challenging conditions of confinement and is seeking injunctive relief, transfer to another prison renders the request for injunctive relief moot absent some evidence of an expectation of being transferred back. *See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Here, the Court's docket reflects that Plaintiff is currently housed at Corcoran State Prison. (Doc. No. 25 (notice of change of address).) He does not allege any of the defendants are also at Corcoran, and Defendants aver they remain at Centinela. Accordingly, Defendants no longer have oversight or control over whether Plaintiff

18
16-CV-63-DMS(WVG)

receives a kosher diet and an injunction would carry no weight.[13]  As a result, to the extent Plaintiff seeks injunctive relief, such claim is moot and should be dismissed.

### III.  CONCLUSION

Based on the foregoing, this Court respectfully RECOMMENDS as follows:

(1)  That Defendants Buck and Farias's summary judgment motion be GRANTED in its entirety and judgment accordingly be entered in their favor; and

(2)  That Defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART.[14]  Specifically, this Court respectfully recommends:

    (a)  That Defendants' motion be GRANTED IN PART, and Plaintiff's claims against all Defendants in their official capacities be DISMISSED WITH PREJUDICE;

    (b)  That Defendant Farias's motion be DENIED IN PART insofar as he argues claims arising out of the disciplinary hearing at issue are barred by *Heck v. Humphrey*;

    (c)  That Defendants Buck and Farias's motion be GRANTED IN PART to the extent they contend they are entitled to qualified immunity from suit, and the Complaint against them be DISMISSED WITH PREJUDICE; and

    (d)  That Defendants' motion be GRANTED IN PART as to Plaintiff's request for injunctive relief, which is moot in light of his transfer to another institution.

---

[13] It appears from Plaintiff's opposition that his kosher diet has resumed at Corcoran. (*See* Doc. No. 17 at 3:18-20 ("[A]t the institution that he is currently at, when the food is frozen, he is permitted to take it back to his cell, [sic] and allow it to thaw.").)

[14] In the event the reviewing Court adopts the recommendation to grant the summary judgment motion, the reviewing Court may deny Buck and Farias's motion to dismiss in its entirety as moot.  For purposes of this section, however, the recommendations in subsection 2(a) proceed as though the reviewing Court will elect to reach the issues in Buck and Farias's motion to dismiss.

1   Adoption of the above recommendations would result in the termination of this case
2  in its entirety against Defendants Buck and Farias. However, the case would proceed
3  against Defendants Posner and Phillips in their individual capacities only, but without
4  injunctive relief available to Plaintiff.

5   This Report and Recommendation is submitted to the United States District Judge
6  assigned to this case, pursuant to the provisions of 28 U.S.C § 636(b)(1) and Federal Rule
7  of Civil Procedure 72(b).

8   **IT IS ORDERED** that **no later than December 28, 2016**, any party to this action
9  may file written objection with the Court and serve a copy on all parties. The document
10  shall be captioned "Objections to Report and Recommendation."

11   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with
12  the court and served on all parties **no later than January 10, 2017**. The parties are advised
13  that failure to file objections within the specific time may waive the right to raise those
14  objections on the appeal.

15  **IT IS SO ORDERED.**

16  DATED:  December 2, 2016

Hon. William V. Gallo
United States Magistrate Judge